**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harold P. Gewerter,<br><br>           Movant,<br><br>v.<br><br>Securities and Exchange Commission,<br><br>           Respondent. | No. CV-16-02556-PHX-DLR<br><br>**ORDER** |

Before the Court is Harold Gewerter's Motion to Quash Subpoena. (Doc. 1.) The motion is fully briefed, and the Court heard oral argument on July 29, 2016. For the following reasons, Gewerter's motion is denied.

## **BACKGROUND**

The Securities and Exchange Commission (SEC) has opened an investigation into four entities (Order Entities) believed to be engaging in securities fraud. (Doc. 4 at 3-4.) Because of suspicious similarities in the Order Entities' Form S-1 Registration Statements, the SEC suspects that the Order Entities are failing to disclose or making materially false statements about their management and control persons. (*Id.* at 4.) For example, the Registration Statements include identical resumes for purportedly different control persons, and some information that is supposed to be entity-specific appears to have been copied verbatim between the Order Entities' statements. (*Id.* at 4-5.)

Gewerter, a Nevada attorney, filed the Registration Statements for the four Order

Entities, and is listed as counsel on all of the Registration Statements. (*Id.* at 5-6.) Additionally, Gewerter filed a Registration Statement on behalf of a fifth entity, Stuart King Capital Corp. (Stuart King), which contains similarly suspicious entries. (*Id.* at 5.) The SEC has learned that some investment funds raised by Stuart King were deposited into one of Gewerter's IOLTA Accounts. (*Id.* at 6.) The SEC Division of Corporate Finance instructed Gewerter that Stuart King is required to return these investment funds. (*Id.*) To the SEC's knowledge, however, Stuart King has not done so. (*Id.*) Further, Gewerter appears to have deposited at least $22,000 into and transferred at least $17,000 from the IOLTA Account in connection with the Order Entities. (*Id.* at 7.) These transactions include payments to and from a third party that the SEC believes is an undisclosed control person of one or more of the Order Entities. (*Id.*)

On April 25, 2016, the SEC issued a subpoena to Wells Fargo Bank for records associated with Gewerter's IOLTA Account. (*Id.*; Doc. 1 at 18-22.) The SEC seeks to identify the source of the funds for payments made on behalf of the Order Entities, to trace the movements of any Stuart King investment funds, and to uncover other investment funds or other suspicious deposits associated with the Order Entities. (Doc. 4 at 7.)

The SEC mailed a copy of the subpoena to Gewerter, along with instructions on how to challenge it. (*Id.* at 7-8.) These documents were delivered to Gewerter on April 26, 2016. (*Id.* at 8.) Gewerter contacted the SEC on May 5, 2016, and again on May 9, 2016. (*Id.*) He proposed that Wells Fargo be required to produce only checks relating to the Order Entities and suggested that he would provide the SEC with a list of other related transactions. (*Id.*) The SEC declined Gewerter's proposal. (*Id.*) Consequently, on May 11, 2016, Gewerter filed the instant motion to quash. (*Id.*)

## LEGAL STANDARD

The Right to Financial Privacy Act of 1978 (RFPA) provides "the sole judicial remedy available to a customer to oppose disclosure of financial records" pursuant to an administrative subpoena. 12 U.S.C. § 3410(e). RFPA requires a customer objecting to

the production of bank records to file a motion to quash within fourteen days after the investigating agency mails the subpoena to the customer or within ten days after the customer is served with the subpoena. 12 U.S.C. § 3410(a). The court must deny the motion if "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry[.]" 12 U.S.C. § 3410(c).

## **DISCUSSION**

Gewerter's motion to quash is untimely. The SEC issued the subpoena on April 25, 2016 and sent Gewerter a copy that same day. Gewerter received the subpoena, along with instructions for challenging it, on April 26, 2016. He did not file his motion to quash, however, until May 11, 2016—fifteen days after he received the subpoena and sixteen days after it was mailed. Courts construe RFRA's time limits as jurisdictional and strictly enforce them. *Turner v. United States*, 881 F. Supp. 449, 450-51 (D. Haw. 1995). Because Gewerter did not file his motion to quash within fourteen days after the SEC mailed it to him or ten days after he received it, the Court lacks subject matter jurisdiction over Gewerter's motion.

Even if Gewerter's motion were timely, however, the Court would deny it because there is a demonstrable reason to believe that the SEC is conducting a legitimate law enforcement inquiry and a reasonable belief that the records sought are relevant to it.

"An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith." *Pennington v. Donovan*, 574 F. Supp. 708, 709 (S.D. Tex. 1983). The SEC is statutorily empowered to investigate suspected violations of federal securities laws. 15 U.S.C. §§ 77t(a), 78u(a); *Sec. & Exch. Comm'n v. Arthur Young & Co.*, 584 F.2d 1018, 1023 (D.C. Cir. 1978) ("Congress has endowed the Commission . . . with broad power to conduct investigations . . . [to] ferret out violations of the federal securities laws and implementing regulations, . . . and in that connection to call for production of relevant materials by those who seem to have them."). Gewerter

does not argue or offer evidence that the SEC is conducting its investigation solely for an improper purpose. Accordingly, the Court finds the challenged subpoena is issued in connection with a legitimate SEC inquiry.

Subpoenaed information is relevant if the requested material "touches a matter under investigation." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (internal quotations and citations omitted). "RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense[.]" *United States v. Wilson*, 571 F. Supp. 1417, 1420 (S.D.N.Y. 1983). The SEC contends that Gewerter's IOLTA Account records will allow it "to confirm whether [the account] contains, or has contained, offering proceeds or other monies raised or deposited under the names of Stuart King, the Order Entities, or other entities that may not yet be known to the staff but that may have engaged in similar offers[.]" (Doc. 4 at 14.) Additionally, the SEC "seek[s] the records to identify any IOLTA Account funds transferred to, from, for the benefit of, or on behalf of any Order Entities so that it can obtain a more complete picture of the conduct and transactions being investigated." (*Id.*) Finally, the SEC argues that the IOLTA Account records will allow it to "trace what happened to money connected to Stuart King, the Order Entities, or any entity that made similar offerings that was transferred to, from, or through the IOLTA Account for purpose of disgorgement should the SEC file an enforcement lawsuit here." (*Id.*) The Court finds that the financial records sought by the SEC's subpoena are relevant to its legitimate securities fraud investigation.

Despite receiving instructions on how to challenge the SEC's subpoena under RFPA, Gewerter ignores the relevant standards. Instead, he argues that the subpoena does not comport with Fed. R. Civ. P. 45. (Doc. 1 at 4-6.) He contends that the subpoena is overbroad and seeks irrelevant information because it demands all IOLTA Account records and not those related only to the Order Entities and Stuart King. (*Id.*) But Gewerter does not explain why Rule 45 supplies the relevant standards. As previously explained, RFPA provides "the sole judicial remedy available to a customer to oppose

disclosure of financial records," pursuant to an administrative subpoena. 12 U.S.C. § 3410(e). Moreover, by its terms, Rule 45 governs subpoenas issued by a court. *See* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). Rule 45 does not offer relief to those challenging subpoenas issued by federal administrative agencies. *See LeBeau v. C.I.R.*, No. 07CV237-IEG(POR), 2007 WL 1585175, at *1 n.2 (S.D. Cal. Apr. 2, 2007).

Gewerter also argues that "the identity of clients and the information regarding certain financial transactions is protected by the attorney-client privilege." (Doc. 1 at 9.) "Generally, the identity of an attorney's client and the nature of the fee arrangement between an attorney and his client are not privileged." *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986). Citing *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), Gewerter argues that the identities of his clients and certain financial transactions fall within a narrow exception to this general rule because the information "exposes such parties to potential civil liability." (Doc. 1 at 9.) In *Baird*, clients asked an attorney for tax advice. 279 F.2d at 626. On advice of counsel, the clients anonymously paid back taxes through the attorney. *Id.* The Internal Revenue Service issued a summons requiring the attorney to appear and identify the taxpayers for whom the back taxes were paid. *Id.* at 627. The attorney refused to disclose his clients' identities on the basis of the attorney-client privilege and was found guilty of civil contempt. *Id.* On appeal, the Ninth Circuit acknowledged the general rule that a client's identity is not protected by the attorney-client privilege, but held that a narrow exception exists when the identification "conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client." *Id.* at 632. The Court found that the privilege applied because each client's identity showed "an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed." *Id.* at 633 (internal quotations and citation omitted).

*Baird* is distinguishable from this case. First, *Baird* did not involve disclosure of bank records. Courts have repeatedly held that bank records are not protected by the

- 5 -

attorney-client privilege. *See Harris v. United States*, 413 F.2d 316, 320 (9th Cir. 1969); *see also Grafstrom v. Sec. & Exch. Comm'n*, 532 F. Supp. 1023, 1024 (S.D.N.Y. 1982) (finding attorney-client privilege inapplicable to records sought from banks and denying motion to quash SEC subpoena).

> The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client.

*Harris*, 413 F.2d at 319-20. Unlike the identities of the clients in *Baird*, the records sought by the SEC have already been disclosed to numerous third parties at Wells Fargo and, therefore, cannot be deemed confidential attorney-client communications. Second, Gewerter fails to explain how disclosure of the IOLTA Account records would be tantamount to an admission of guilt on the part of his clients. The Court finds that *Baird*'s narrow exception is inapplicable.[1]

Finally, Gewerter argues that the IOLTA Account records are not subject to disclosure because his clients have an enforceable privacy interest in those records. (Doc. 1 at 6-7.) "While there is a constitutional right to what is known as informational privacy, which may even encompass confidential financial information," this right of privacy does not extend to "information voluntarily conveyed to . . . banks and exposed to their employees in the ordinary course of business." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 942 (9th Cir. 2009) (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976); *see also Halbig v. Navajo Cty*, No. CV09-8124-PCT DGC, 2010 WL

---

[1] Gewerter also relies on *In re Grand Jury Subpoenas Duces Tecum (Lahodny)*, 695 F.2d 363, 365 (9th Cir. 1982) for the proposition that fee information can be privileged if it "provide[s] the last link in the chain of evidence incriminating the client." (internal quotations and citation omitted). In subsequent decisions, however, the Ninth Circuit has explained that *Lahodny* "misstated the principle of *Baird*." *In re Grand Jury Subpoenas*, 803 F.2d at 497; *see In re Osterhoudt*, 722 F.2d 591, 592-93 (9th Cir. 1983) ("The principle of *Baird* was not that the privilege applied because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney.").

- 6 -

432335, at *5 (D. Ariz. Feb. 2, 2010) (explaining that right to privacy "does not include checks, financial statements, deposit slips," or other information voluntarily disclosed to banks).

## CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over Gewerter's motion because it is untimely under RFPA. Even if the motion were timely, the SEC's subpoena is enforceable because there is a demonstrable reason to believe that the SEC is conducting a legitimate law enforcement inquiry and a reasonable belief that the records sought are relevant to it. Accordingly,

**IT IS ORDERED** that the SEC's subpoena is enforceable, and Gewerter's motion to quash, (Doc. 1), is **DENIED**. The Clerk is directed to terminate this case.

Dated this 29th day of July, 2016.

Douglas L. Rayes
United States District Judge